The next case on the calendar is Holmes v. Apple. Good morning. Good morning, Your Honors. My name is Robert Lano. I represent Pastor Holmes, the plaintiff appellant. This is a case that should have gone to the jury. The jury has ultimate authority for fact-finding. The jury has ultimate authority for credibility. The minute you have a lower court decision where the judge says this was a quote-unquote convoluted tale, the lower court went beyond its authority. It was making a credibility call. The lower court was saying that plaintiff was a teller of tall tales, telling a quote-unquote convoluted tale. That is for the jury to determine. They have ultimate authority for that. Secondly, as to facts, when the lower court accepted defendant's theory that there were two computers, two laptops, they were making a fact call, and that should have been left for the jury. The computer that your client had personally, did that correspond to the ID number on it, correspond to the ID number that was shipped from Amazon pursuant to his order? Plaintiff. Is that a simple question? Okay. I would say that the answer to that is what Apple said, that there is one serial number for the computer. So I really don't know what happened. I don't think anybody really knows what happened. Two computers shipped. There were two computers shipped. One got shipped to the purchaser that was out in Louisiana, and the program's embedded on it, and then there's a sticker that's put on it, and that's shipped from one spot. And then there's a second computer that's shipped from a different spot. Both of these spots are in, both of these plants are in, or distribution centers are in Pennsylvania. But in any event, it's a second spot, and that's supposedly delivered to your client. No. Not all of what you just said. You just accepted. The client ends up with two computers. You just recited defendant's theory of the case. You just accepted the moving party's statement of the case. So what's the issue of fact that you have that rebutts that? What's the evidence that you proffer to create an issue of fact that rebutts that? Your client had two computers. He had one of them had the sticker still on it, and the identification number on that computer corresponded with the computer that was originally shipped to the company in Louisiana. He acknowledged that the sticker was on it, and no one disputes that the sticker was on it. Nobody really disputes that it was their computer. And then he has a second computer that is shipped. Apple says it was shipped from a certain spot, and so my question is how does he dispute it and how does he merge these two computers? I don't understand. My client didn't say that. My client said that he bought a computer, a computer was delivered to him, and it was brand new. He said it was shrinked, but he also said it had no sticker on it, didn't he? Right. So how did he get hold of the second computer? Did it just materialize in his storage shed? That has to be determined in discovery. Well, who's in control of all that information? Defendant, sorry. Who owned the storage shed? Chelsea Mini Market. Who rented it? The estranged spouse of the appellant. Your client exerted dominion and control over it. How are they supposed to prove the information that is within the possession of your client? The information is that there was one computer because Apple stated that there was one serial number. So that has to be explored in discovery. We're at the point where complaints have been stated. I'm curious to dispute there were two computers. I don't know what happened, and I'm not going to go out on a limb. I know there were two computers. Was your client in possession of one and his estranged wife in possession of the other? I don't know that. I think that has to be sorted out in discovery. All right. The point is that's what the lower court should have done, is allowed discovery to find out what happened, because if you do look through what the moving parties had to say, there are huge gaps in what was going on. Don't forget there are other parts to the puzzle, if you want to call it that. Check Point bought their computer much longer. Do you dispute that your client bought the computer through Amazon? No, that is a fact. He bought it from Amazon. What's your connection to Apple in contract? Where's your privity in contract with Apple? We don't have any. What's your claim against Apple? We cited cases that show that privity is not required anymore for a product defect case. Why are you suing in contract? Well, there's a theory of liability, of breach of contract, because he did pay. Tell me what your contract is with Apple. The contract was the AppleCare that he paid for. Apple is a service provider. It's a service, contract of service, a broken or defective computer. And that was paid for, and that's undisputed that he paid for it, that Apple accepted it. And even after he got the computer, he called them up a couple times about hardware problems. So they honored their computer in that stretch of time, helping out with service calls. So the thing is, you have a very equivocal fact pattern. You have one defendant, Apple, talking about how there's only one computer, and they say the one serial number for the one that they track to tie homes and the one checkpoint, all one serial number. How did that happen? How do you explain that that computer that belonged to the company in Louisiana ends up in a storage shed rented to your client? How does that happen? Doesn't that – don't you wonder about that? Well, I think the thing is, when you have a complaint, the rules say you have to state a claim. How do you explain it? How do I explain it? I explain it through negligence could be one possibility, the carrier, FedEx. Well, FedEx reported it was stolen. Pardon me, Your Honor? FedEx reported it was stolen. And that was the ultimate fact for this case. The most material fact is a missing computer was called stolen. To me, it was a lost or misplaced computer, but FedEx and Checkpoint jumped to the point that it was stolen, and that set everything in play for my client to get hunted down by the police department for a stolen computer. So we recited cases. You have a duty to report honestly to the government.  We all know this every day in this court. There is a motion to amend that was denied by the lower court. The clear policy of the Second Circuit is amendments should be allowed. And as I just said, they do have a duty. They violated that duty, and they caused damages to a plaintiff. So under the Second Circuit policy, as well as the rules, amendment against FedEx should have been allowed. So just to repeat, you've got the tort cause of action. I don't think you have any jurisdictional issues. And that should have been allowed to go forward. To me, right now, as this— What did FedEx do? I mean, what do you want to plead that they did? I would say that FedEx had a duty to carefully report or to not report this as a crime. They should have looked at it. They should have investigated it or tracked it down. They didn't have to involve the police department. Checkpoint did. They found it in your fellow's storage shed. They surveilled my client for three months. It was their computer. You don't dispute that. They installed spyware in it so that they could track their computer. Do you dispute that the computer that bore the Checkpoint label on it was not theirs? Yes, that is a dispute. Who owns it? Does your client own it? My client paid for a computer. My client received a computer. My client was tracked down. Without a sticker on it. Right. Right? Right. But miraculously, miraculously, a computer with Checkpoint's sticker ends up in your client's storage shed. Miracle. You've reserved some rebuttal time. Yes. Your Honor. Thank you. Good morning, Your Honors. May it please the Court. Hannah Shen Wan here representing Defendant Apple. And if I can just jump right to the first remark made by my adversary. I think as this exchange has fully underscored, convoluted is in no way a disparagement of anyone's credibility. I think convoluted is an objective way to describe the allegations. I've only found one. The thing that troubles me, there's only one identification number. How do you explain that? Your Honor, it's a little unclear. Steve Jobs is spinning in his grave. I can tell you if you decide that you do decide to look beyond the pleadings, which we don't think you need to, to affirm in this case against Apple. But if you do decide to look at the sealed declaration of Tim O'Neill, you can see that at least as far as Apple's concerned, we only manufacture laptops with one serial number at a time. That doesn't mean there might not be other laptops in the mix. But in terms of what happened here, it doesn't matter.  No, Your Honor. Our position is Apple sold Amazon a computer, and then from then on, Apple had no role to play in anything that happened next. I get that. Yeah. But the computers, but you identified two deliveries out of your facilities, right? Again, as far as we, as Apple is concerned, there was one shipment of one computer to Amazon, and that is the only shipment of any MacBook Pro that we're aware of at issue here. I will tell you — Not alluded is an understatement. I will say on the matter of AppleCare, AppleCare Protection is a product that can be gifted with another, an Apple device. So if I buy my husband a watch for the holidays, an Apple watch, and I want to make sure that watch is protected under warranty for a longer time, I can buy that protection plan off of Amazon and give it to my husband. And then if he wants to trigger that protection, he has to register that contract. That's all in the terms of agreement. Under counsel's theory that if you buy it, you're privy to that contract, the AppleCare contract itself, that would mean that every time that an AppleCare purchase package was sold through a third-party vendor, then there would always be two beneficiaries of that contract. It is certainly true that Mr. Holmes formed a contract with Amazon to buy an AppleCare package, but that doesn't mean he was then subject to its terms until the registering. And that's just common sense. It allows for people to give these as gifts, which happens — which he himself alleged doing. He gave the product to his wife. And then she was the one who registered. And she was the one who registered. And that is what appears in this. Ultimately, on this issue of one versus two laptops, Apple doesn't really take a very strong position on this because, ultimately, it does not matter for purposes of Apple. Apple sold a MacBook Pro to Amazon. Amazon sold it. And then from then on, Apple was not involved. And for that reason, we ask that you affirm — again, affirm the district court's decision for Apple. Thank you. Good morning, Your Honors, and may it please the Court. Michael Gettig of the firm of Davis Wright Tremaine for Amazon. I'd like to take this time to bring some clarity to the events in question here. And I would like to do that by framing the lower court's entry of judgment. With regard to Apple, Apple moved under 12B. So Apple was under a duty to take the allegations as pled. Amazon filed the motion under 12B and Rule 56 in the alternative. So we have now, in the record, facts which show, documents and testimony from Mr. Holmes himself, which show that there were, in fact, two computers, one that went to Check Point and the other that went to Mr. Holmes. Mr. Holmes stated in open court that when he got the laptop, it was in shrink-wrapped condition. It had no sticker on the bottom. It was brand new. He was not there when that device, when Check Point's device, was recovered from the Chelsea Mini storage. His wife was there. And police officers were there. When that device was returned to Check Point, the IT professional quickly confirmed that it was the device that Amazon had sent to him and that he had pre-installed this software. He had installed this software and affixed the sticker to the bottom. There are two computers.  Now, Mr. Holmes had the opportunity to present to the lower court any evidence that he had or any arguments about evidence that was unavailable to him, and he did not avail himself of that opportunity. When the motions were filed, Mr. Holmes filed an opposition, and then he followed that up a short while later asking Judge Ramos for more time so that he could get additional information and additional evidence. The defendants took no position. Judge Ramos granted that. And when the day came that Mr. Holmes was supposed to present an argument why discovery should be granted, why he would be entitled to discovery, Mr. Holmes filed nothing. Now, when Amazon filed its papers in the district court, it expressly advised Mr. Holmes that he was under a duty to present admissible evidence, evidence in admissible form. It did that by way of the local rule requirement that pro se plaintiffs be provided with this information. We did that. And on top of that, it became clear over the course of the lower proceeding that Mr. Holmes knows his way around the courtroom. He has filed affidavits previously in opposition to checkpoints motion to dismiss. So he knew how to do this. We told him he needed to do it, and he presented nothing. So with regard to the last point I'd like to address, it's clear that Mr. Holmes is a dissatisfied Amazon customer. Amazon bent over backwards to make Mr. Holmes happy and whole. It offered him, according to the terms of use, Amazon will grant a refund, will provide a refund upon return of the purchased items. Amazon waived that requirement. It said, we're not even going to require you to return that laptop to us. We'll just give you a refund. Mr. Holmes said no. Amazon said, okay, well, we'll ask the court to enter judgment against us and turn over to the clerk of the court the amounts in controversy, the amount of the purchase price. The court did that. Those funds now are with the clerk of the court in the Southern District of New York. When that process happened, Amazon advised Mr. Holmes of the legal effect under Rule 68, and in our papers we ask that the court remand this matter for an assessment of fees under Rule 68 against Mr. Holmes. I see my time is up. Thank you. Morning, Your Honors. Brian Grafman for Checkpoint. For clarity, Checkpoint of Louisiana and Texas buys and registers this laptop, there's really no dispute, loads it with software, ships it via FedEx to Dubai where it goes missing under FedEx's care. It then pops up on Checkpoint's IT console being used by a Stephanie Scott with a photo of Mr. Holmes' driver's license that's at page 147 in the appendix. Checkpoint tells FedEx, which tells the Louisiana police, which contacts the NYPD, which recovers the laptop with Checkpoint's sticker affixed. As the court found, there's a lack of New York jurisdiction over Checkpoint and no tort to support jurisdiction. Of 27,000 sales in the last four years, five of Checkpoint's, for three clients, had a minor New York aspect. A ship to Texas or Louisiana, but send the bill to New York, and an Arkansas client purchasing $500 of goods. And that's in the opinion at page 10 and in my brief at page 10. Checkpoint's business is not computers, the subject of this case. It's oil pumps used for fracking, which is illegal in New York, page 234 of the record, and Holmes concedes that at page 185 to 186. Also, as the court found, there's no negligence tort here. That's the opinion at 12. It was Checkpoint's computer, as has been noted by the bench. Amazon has Checkpoint ordering the same type computer, not the same, they didn't have the serial number, but that's page 307. Apple has Checkpoint registering this laptop, this serial number, and that's page 378 to 383 of the record. FedEx records show Checkpoint's package being scanned by it, page 145 and 147 of the record, and going missing. This is all before Holmes even purchases his computer. Then he purchases his computer with no Checkpoint sticker, as you noted, page 260 of the record, and he's not there when the police pick it up, that's page 260 of the record, and the computer in return has Checkpoint sticker, page 149, 150 of the record, and pages authenticating at page 128 to 129. Holmes concedes there could be two laptops in his brief year at pages 17 to 18, as he did below at page 301 of the record. His only claim against Checkpoint is negligence, but there's no allegation of harm to his computer content, just emotional harm. The judgment should be affirmed on both grounds, no jurisdiction and no tort to support jurisdiction. Unless there's any questions, I'll rest on the briefs. Thank you. Thank you, Your Honors. The question remains, how did and why does Apple say there's just one ID, one serial number? Apple was here today for this appeal, for the oral argument, and in their brief, and they cannot answer Your Honor's question, how come there's just one serial number? So you have a lower court deciding a summary judgment case, saying it's clear and free of doubt, we're going to enter the most drastic remedy, summary judgment, but there's pure equivocality. Two defendants are saying it's a two-computer case, one defendant is saying it's a one-computer case, and the judge himself admitted every time this case comes up for conference, I'm confused. That is a lot of doubt, and yet summary judgment should only be granted in the clearest of cases. So that, I'm going to just say I can't figure out how that even happened. On the Rule 68, we would refer the court to our brief. We said that just making that kind of offer of judgment doesn't win the day. What do you say about Amazon's application for counsel fees? I said the same thing in this brief that we said in Eberhard versus Amazon. It's one of the wealthiest companies in the world by either capitalization or sales or whatever. There's clear law that says you cannot use a statute to come up with an absurd result. We cited cases going back to the 1860s. You give that tech giant money for either cost or attorney fees, it's an absurd result. They're beyond rich. My opponent talks about how there was no tort by Checkpoint. They surveilled my client for about four months, and what I'd like to know is, how come all of this went down in September and the laptop was retrieved in September? Was that Checkpoint's computer? Do you concede that it was Checkpoint's computer? I said before I don't concede that at all. I defer that to the jury. The jury is the ultimate fact finder here, not me, not the court. They decide the issues of fact. There's a massive issue of fact here. Checkpoint sticker was on the computer? That's what the facts reveal. Do you concede that somehow Checkpoint managed to install the software which allowed it to, which led it to ultimately conclude that Ms. Scott had the computer? Yes. The inference to be drawn is that. Did Checkpoint somehow manage to have possession and control over that computer? In terms of surveillance, yes. And if there is no issue of fact that Checkpoint did indeed own the computer, did they commit a tort in trying to recover their property? You could get into a few questions. No, just answer my question. If there is no issue of fact as to the ownership of the Checkpoint computer, did they commit a tort in attempting to recover their property? Yes, because. And what tort was that? Falsely reporting that the computer was where they said it was? Pardon me one more time, Your Honor. Where was it? And what tort was that? Falsely reporting that the computer was where it was they said it was and that the person that was using it was the person that they said was using it? The falsity was in stating that it was stolen when it was merely gone out of their possession. FedEx told them it was stolen. That was unreasonable for them to assume that what FedEx told them was a lie? To your prior question, that's a fact pattern that has to be discovered in discovery as to what they said. All right. And, finally, as to jurisdiction, the Checkpoint surveilled my client in New York. They were an out-of-state defendant causing a tort in-state. That's 302 under the CPLR. And, furthermore, on the minimum contacts, they did avail themselves of New York by either selling here or using a court. So, therefore, there is jurisdiction. Thank you, Your Honors. Thank you all. We will take the matter under advisement.